

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed May 28, 2010**

---

THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| STAXXRING, INC., | § | CASE NO. 10-30668-SGJ-11 |
| | § | |
| DEBTOR. | § | |

**<u>MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
INVOLUNTARY PETITION</u>**

On April 28, 2010, this court held a hearing (the "Hearing")
on the Motion to Dismiss Involuntary Petition (the "Motion to
Dismiss") filed by StaxxRing, Inc. (the "Alleged Debtor"). The
court heard evidence solely pertaining to whether the
jurisdictional requirements of 11 U.S.C. § 303(b) had been met,
and, more specifically, regarding which, if any, of the claims of
William B. Adams ("Mr. Adams"), Christian Adams ("Mrs. Adams"),

-1-

Burds, Reed, & Mercer, P.C. ("BRM"), LSSS Management, Inc.

("LSSS"), Cliff Price & Company ("Price"), and Lacee Holton

("Holton" and, collectively with Mr. Adams, Mrs. Adams, BRM,

LSSS, and Price, the "Petitioning Creditors") are not the subject

of a bona fide dispute as to liability or amount.  Based upon the

evidence, the court finds that the jurisdictional requirements of

section 303(b) have not been met and that the involuntary

petition must be dismissed.

<u>I. RELEVANT STATUTORY AUTHORITY</u>

Section 303(b)(1) provides that an involuntary case may be

commenced by the filing with the bankruptcy court of a petition

by:

> [T]hree or more entities, each of which is either a
> holder of a claim against such person that is not
> contingent as to liability or the subject of a bona fide
> dispute as to liability or amount, or an indenture
> trustee representing such a holder, if such
> noncontingent, undisputed claims aggregate at least
> $13,475 more than the value of any lien on property of
> the debtor securing such claim held by the holders of
> such claim.

Thus, in order to survive the Motion to Dismiss, the

Petitioning Creditors were required to show that at least three

of them hold claims against the Alleged Debtor, of an aggregate

unsecured amount of at least $13,475, that are not contingent as

to liability or the subject of a bona fide dispute as to

liability or amount.

The Bankruptcy Code does not define "bona fide dispute as to

liability or amount," and as a result, the Fifth Circuit held in *In re Sims*, 994 F.2d 210, 221 (5th Cir. 1993), *cert den'd sub nom. Sims v. Subway Equip. Leasing Corp.*, 510 U.S. 1049 (1994), that courts should measure "bona fide dispute" under an objective standard. Under that objective standard, the bankruptcy court must "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt."[1] The Fifth Circuit, citing *In re Rimmel*, 946 F.2d 1363, 1365 (8th Cir. 1991), further elaborated that a petitioning creditor must establish a prima facie case that no bona fide dispute exists with respect to its claim and that then, the burden shifts to the alleged debtor to present evidence demonstrating that a bona fide dispute exists.[2] Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden.[3] Thus, the court's task is to decide whether a dispute that is bona fide exists; the court is not to actually resolve the dispute.[4] However, this does not mean that the court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the court may be

---

[1] *Id.*

[2] *Id.*

[3] *Id.* This court previously noted in *Henry S. Miller Commercial, LLC*, 418 B.R. 912, 921 (Bankr. N.D. Tex. 2009) that the "objective standard" in the law has historically meant using the hypothetical "reasonable man" standard.

[4] *Id.*

required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists.[5]

## II. The Petitioning Creditors' Claims

A.   Mr. Adams

Mr. Adams is a shareholder, officer, and director of the Alleged Debtor.  Mr. Adams is currently embroiled in various disputes with the other shareholder of the Alleged Debtor, Molly Langford ("Ms. Langford"), the latter of whom is acting for the Alleged Debtor in these proceedings and is opposing the involuntary petition.  In any event, Mr. Adams has asserted an unsecured claim herein in the amount of $42,000.  This claim was undisputed on the record by the Alleged Debtor's counsel at the Hearing.  Thus, the $42,000 claim is not the subject of a bona fide dispute as to either liability or amount.

At first blush, this might appear to be the end of the analysis.  However, the Alleged Debtor asserts that Mr. Adams is, in fact, owed *more* than what was asserted in the involuntary petition, some of which additional amounts are disputed by the Alleged Debtor.  The court does not believe this fact to be relevant in deciding whether or not a petitioning creditor's claim (as alleged in the involuntary petition) is the subject of a bona fide dispute.  The Alleged Debtor nevertheless argues that

---

[5] *Id.*

this court should render a decision on whether the amendment of

section 303(b)(1) under the Bankruptcy Abuse Prevention and

Consumer Act ("BAPCPA") of 2005, which added "as to liability or

amount", allows an alleged debtor to challenge a ***portion*** of a

claim in order to establish that the whole claim is the subject

of a bona fide dispute as to amount.  Again, since Mr. Adams has

only chosen to assert a claim herein for $42,000, which the

Alleged Debtor does not dispute, the court does not believe that

such a finding is necessary in this instance and finds that Mr.

Adams is a qualified petitioning creditor under section

303(b)(1).

B.    Mrs. Adams

     Mrs. Adams (who is the wife of Mr. Adams, who was just

discussed) was an employee of the Alleged Debtor from January

2005 through May 2009.  Mrs. Adams asserts that she is owed

$8,056.36 as reimbursement for certain expenses that were

incurred by her in the ordinary course of business working for

the Alleged Debtor.  Petitioning Creditors' Exhibit 24 contained

receipts and invoices for these alleged business expenses.

First, the court would note that there is no evidence of a

written employment agreement between the Alleged Debtor and Mrs.

Adams or of any agreement which references the Alleged Debtor's

responsibility to reimburse employees for ordinary course

business expenses.  Second, Ms. Langford, being the only other

owner and officer of the Debtor (along with Mr. Adams), testified as to disagreements she had with Mrs. Adams' claims for reimbursement, including the fact that (i) Mrs. Adams had improperly claimed personal expenses such as babysitting for reimbursement; (ii) Mrs. Adams submitted items which lacked supporting documentation which would allow the Alleged Debtor to identify the connection between the expense claimed and the Alleged Debtor; and (iii) Mrs. Adams charged items which the Alleged Debtor did not even need (*i.e.*, an accounting software upgrade).[6] Finally, based on the invoices contained in Alleged Debtor's Exhibits 12 and 13, which both suggest that payment for Mrs. Adams' alleged business expenses should be remitted to **LSSS** (LSSS is a company controlled by Mr. Adams that essentially has provided credit to the Alleged Debtor), there is confusion as to whether the claims asserted by Mrs. Adams (if genuine) are actually owing to her, or to LSSS.[7] It is for these reasons, that the court finds there is an objective basis for a bona fide dispute as to Mrs. Adams' claim, in its entirety. Thus, Mrs. Adams does not qualify as a petitioning creditor under section

---

[6] Ms. Langford also testified that many of the receipts that Mrs. Adams submitted to the Alleged Debtor were for expenses incurred in January of 2009, almost six months prior to when Mrs. Adams initially requested reimbursement from the Alleged Debtor.

[7] Alleged Debtor's Exhibits 12 and 13 also show that the amounts allegedly owing to Mrs. Adams were shown to be charges made on a credit card in Mr. Adams' name. Moreover, although Petitioning Creditors' Exhibit 24 indicates that Mrs. Adams received partial payments from the Alleged Debtor for $2500 on October 5, 2009 and for $1,000 on November 4, 2009, Mrs. Adams testified that these checks were, in fact, written to Mr. Adams.

-6-

303(b)(1).

C.    BRM

The Alleged Debtor had used the accounting and tax return preparation services of BRM since the Alleged Debtor was formed in 2005.  In July 2009, as in years past, BRM was engaged by the Alleged Debtor to prepare the Alleged Debtor's 2008 U.S. Income Tax Return and the Alleged Debtor's Texas Franchise 2009 State Tax form.  BRM incurred $2,688.72 in fees in relation to these services.  At the hearing, the Alleged Debtor testified that unlike all the previous tax returns completed by BRM, the proposed 2008 tax return prepared by BRM sought to re-characterize Mr. Adams' previous capital contributions to the Alleged Debtor as loans.  There was also testimony that this re-characterization was done at Mr. Adams' sole request.  Ms. Langford testified that she did not agree with this re-characterization and requested it be returned to its original booking, but BRM refused to reverse the re-booking of the capital contribution as a loan, despite Ms. Langford's request.  As a result, the Alleged Debtor ultimately terminated BRM and engaged a new accounting firm to prepare the 2008 tax return which was ultimately submitted to the IRS.  The invoice that forms the basis of BRM's claim as a petitioning creditor is for the 2008 tax return preparation that was never accepted, much less signed and filed by the Alleged Debtor.  Based on these facts, the court

finds that there is an objective basis for a bona fide dispute as to BRM's claim, in its entirety.  Thus, BRM does not qualify as a petitioning creditor under section 303(b)(1).

D.   LSSS

Mr. Adams (again, the shareholder, officer, and director earlier discussed) is the president of LSSS.  As earlier alluded to, LSSS has essentially provided credit, from time to time, to the Alleged Debtor (by allowing the Alleged Debtor to purchase goods and services through LSSS).  LSSS asserts a claim for $1,576.99, which is attributed to business expenses that were placed by Mr. Adams on LSSS' credit card and that were incurred in the ordinary course of business.  These charges incurred by LSSS were generally for postage and office supplies, including payments to Quill.  There was also a charge for the purchase of certain Quickbooks software, which is similar to a charge asserted by Mrs. Adams as referenced above.

At the hearing, Ms. Langford testified that Quill had already been paid by the Alleged Debtor.  The court would specifically note that although the checks (one for $411.31 and one for $359.02, which total $770.33) that were submitted to Quill by Ms. Langford[8] may add up to slightly more then the Quill invoice amounts (one for $96.98, one for $349.71, and one for $236.99, which total $683.68) contained in LSSS' reimbursement

---

[8] *See* Alleged Debtor's Exhibits 1 & 22.

requests, Ms. Langford testified at the Hearing that she had also paid for a fourth Quill invoice, thereby accounting for the slight overage.[9]   The court believes these facts, along with Ms. Langford's credible testimony that the size of the postage charges seemed disproportionate to the size of the Alleged Debtor's business, as well as the testimony regarding the unauthorized charge for the Quickbooks' software, to be enough evidence to create an objective basis for a bona fide dispute as to the other portions of LSSS' claim.   Thus, LSSS does not qualify as a petitioning creditor under section 303(b)(1).

E.   Price

The eligibility of Price as a petitioning creditor was undisputed at the Hearing by the Alleged Debtor, and thus qualifies as a valid petitioning creditor under section 303(b)(1).

F.   Holton

Holton is a former employee of the Alleged Debtor.   Holton was terminated by the Alleged Debtor on January 5, 2010.   Holton asserts a claim of $192 for unpaid holiday and personal days for January 2010 (for January 1, 2010 and January 4, 2010).   Despite the small dollar amount of this claim, Holton testified that this

---

[9] Although Ms. Langford testified that the difference was $174.00, whereas the actual difference upon completing the calculations is $86.85, the court believes that Ms. Langford's testimony was credible and is enough to create a bona fide dispute as to whether these amounts are still owing to LSSS.

money was important and significant to her given her current unemployment status. However, Holton also testified that she did not have a formal written employment contract with the Alleged Debtor and that she had never asserted any claims for reimbursement prior to the involuntary petition being filed.[10] To be clear Holton never even worked a single day in January 2010. For these reasons, the court finds that there is a bona fide dispute as to whether Holton was genuinely legally entitled to her unpaid vacation pay or personal time.[11]

### III. Conclusion

Congress has expressed an intent in section 303 of the Bankruptcy Code that creditors with questionable claims ought not to be allowed to force companies into bankruptcy, and in light of this policy, has put forth somewhat stringent standards in section 303(b)(1). Here, although the six different Petitioning Creditors assert separate claims against the Alleged Debtor, two of these creditors (Mrs. Adams and LSSS) are closely related to Mr. Adams, the disgruntled shareholder. These close connections,

---

[10] There was testimony from both Holton and Ms. Langford that there was a letter of employment stating Holton's hourly pay as well as Holton's hours, however, this document was never admitted into evidence and, according to Ms. Langford's unrebutted testimony, did not guarantee a certain amount of paid vacation and personal days.

[11] The court notes that there is Texas case law which provides that absent a written contract of employment, an employee has no entitlement to vacation pay or personal time, nor does an employer have an obligation to pay for unused vacation pay or personal time. *See Interstate Hosts, Inc. v. Thompson*, 435 S.W.2d 957, 958 (Tex. Civ. App. 1968); *See Brown v. Sabre, Inc.*, 173 S.W.3d 581, 587-88 (Tex. App. 2005)

in this case at least, have somewhat muddied the waters and have contributed to the Petitioning Creditors inability to meet their burden under section 303(b)(1). In any event, the court has found that there are only two qualifying petitioning creditors in this case, Price and Mr. Adams, who hold claims not subject to a bona fide dispute as to liability or amount against the Alleged Debtor under section 303(b)(1), and accordingly, it is:

ORDERED that the Motion to Dismiss is **GRANTED**; it is further

ORDERED that an order for relief shall not be entered; and it is further

ORDERED that the involuntary petition shall be dismissed with prejudice.[12]

### ###END OF ORDER###

---

[12] The court reserves jurisdiction to entertain a request for a section 303(i) judgment.